### ISRAEL WELLER *vs.* JOSEPH BARBER.

**A.,** owning a parcel of land bounded south by a river, southwest by a line four fifths of a rod long, which the river covered at high water, northwest by a road, and northeast by land of W., conveyed to B. the east part of the parcel. B. afterwards conveyed to A. a parcel " bounded north by land of W., east by the river, and west by the road, being the same land conveyed to me by A., reference being had to his deed to me for a more full description of the premises." A. then conveyed to C. a parcel " bounded on the west by the road, on the north by land of W., and east and south by the river, being the same lot as was deeded to me by B., to which deed reference is made for the fuller description of the premises, it being intended to convey the same premises as were thus conveyed to me, neither more nor less." *Held,* that the deed from A. to C. conveyed only the same land as the original deed from A. to B.

WRIT OF ENTRY to recover land in Pittsfield. At the trial in the Superior Court, before *Brigham,* C. J., a plan was introduced in evidence, a copy of which is printed in the margin. The demanded premises are those included within the lines A B, B C, C D, and D A. The line A B is four fifths of a rod long, and at high water the river comes up to the road at A.

Henry Noble in 1857 then owned the whole parcel embraced within the lines A B, B E, E F, and F A. On November 10, 1857, he conveyed to Saviah M. Parker that part of the parcel which is included within the lines D C, C E, E F, and F D, by a deed in which the granted premises were described as follows :

Weller *v.* Barber.

" Beginning at a point in the southwest corner of John Weller's land, thence southwesterly in the east line of the highway four rods to the northwest corner of land of Henry Noble, thence in a line parallel to the house on the premises until it strikes the river, thence northerly on the river to the land of John Weller, thence on Weller to the place of beginning."

On July 1, 1858, Parker conveyed to Noble a parcel of land described in the deed as follows : " A certain piece or parcel of land situate in Pittsfield, opposite the residence of John Weller, bounded and described as follows, to wit, northerly by lands of said John Weller, easterly by the west branch of the Housatonic River, and westerly by the highway leading from Pittsfield to Lanesborough, being the same land conveyed to me by said Henry Noble in the fall of 1857, reference being had to his deed to me for a more full description of the premises."

On November 18, 1858, Noble conveyed to Francis Jones a parcel of land described in the deed as follows : " Bounded on the west by the road leading from the village of Pittsfield to Pontoosuc, on the north by land formerly owned by John Weller, and east and south by the river, being the same lot as was deeded to me by Saviah M. Parker, to which deed reference is made for a fuller description of the premises, it being intended by me to convey the same premises as were thus conveyed to me, neither more nor less." Jones conveyed to Charles L. Russell the land conveyed to him by this deed, and Russell conveyed it to the demandant. Noble in 1868 executed and delivered a deed to Thomas W. Sloan, which purported to convey the parcel A B C D, and Sloan conveyed to the tenant.

The judge ruled that on these deeds the demandant could not recover, and directed the jury to return a verdict for the tenant, which was done, and the demandant alleged exceptions.

*W. R. Plunkett,* for the demandant, cited *Dana* v. *Middlesex Bank,* 10 Met. 250 ; *Melvin* v. *Proprietors of Locks & Canals,* 5 Met. 15 ; *Presbrey* v. *Presbrey,* 13 Allen, 281 ; *Whiting* v. *Dewey,* 15 Pick. 428 ; *Thatcher* v. *Howland,* 2 Met. 41 ; *Cutler* v. *Tufts,* 3 Pick. 272.

*M. Wilcox,* ( *W T. Filley* with him,) for the tenant.

CHAPMAN, C. J. The title in controversy commenced with Henry Noble. His land was bounded south by the river, and northerly by the road to Lanesborough. And it was included within the lines marked on the plan A B, B E, E F, F A. At high water mark, the points A and B would be identical; but as he was bounded by the thread of the river, there was a line of four fifths of a rod between A and B. On November 10, 1857, he made a deed to Saviah M. Parker. Both parties admit that this deed conveyed the land inclosed by the lines D C, C E, E F, and F D. The point D is described in the deed as the northwest corner of land of Henry Noble. In a few months afterwards, on July 1, 1858, Parker reconveyed this land to Noble, and it is contended for the demandant that this deed also included in the description the tract A B C D, which had not been conveyed to Parker. The description is as follows: "Opposite the residence of John Weller, bounded and described as follows, to wit, northerly by lands of said John Weller, easterly by the west branch of the Housatonic River, and westerly by the highway leading from Pittsfield to Lanesborough, being the same land conveyed to me by said Henry Noble in the fall of 1857, reference being had to his deed to me for a more full description of the premises." But the land is not bounded easterly by the river, and the other parts of the description are so imperfect that the reference to the deed of Noble to Parker is an important part of the description, and does not appear to enlarge or diminish it.

Noble then owned the whole. On November 18, 1858, he made a deed to Jones of land " bounded on the west by the road leading from the village of Pittsfield to Pontoosuc, on the north by land formerly owned by John Weller, and east and south by the river, being the same lot as was deeded to me by Saviah M. Parker, to which deed reference is made for a fuller description of the premises, it being intended by me to convey the same premises as were thus conveyed to me, neither more nor less." As the west line of the premises is not mentioned, this reference to the deed of Parker is an important part of the description, and does not appear to enlarge or diminish it. The road appears by the plan to be the northwesterly boundary, and the river is the

southern boundary. And both of the lots A B C D and C D F E have four distinct sides. The authorities cited by the demandant's counsel to the point that a reference to the grantor's title deed cannot control the description of the land by metes and bounds do not apply to a case like this, where the description is imperfect without such reference, and is aided rather than controlled by the reference. Taking all these conveyances together, we cannot doubt that they were each intended to bound westerly on the line C D, leaving the tenant to hold the demanded premises under a subsequent deed from Noble.

*Exceptions overruled.*